NIMMONS, Judge.
After final hearing, the appellant was adjudicated a delinquent child, the trial court having found the appellant to have committed the offense of carrying a concealed firearm. Appellant asserts that the trial court erred in denying his motion to suppress the firearm and statements made by the appellant. We agree and reverse.
At 8:50 P.M. on January 18, 1990, appellant was a passenger in a purple 1979 Toyota Corolla with three other black males. They were driving in the Highlands shopping center parking lot. At the same time, Officer Baker of the Jacksonville Sheriffs Office was patrolling the area in a marked patrol car. He said that he was patrolling the parking lots of the shopping centers and hotels in the area because there had been reports of car thefts, burglaries, and robberies, although there was no indication as to when such offenses had occurred or how fresh the information was.
Officer Baker observed the appellant’s automobile being operated slowly in the parking lot and saw the occupants “looking suspiciously into different businesses.” Baker said that there had been several reports during that week of robbery suspects — black males, in a small vehicle, medium to dark color — being in the area. Officer Baker followed the appellant's vehicle out of the parking lot but, after it immediately returned to the parking lot, Officer *1314 Baker “blue lighted” the appellant’s vehicle. In response, the latter vehicle stopped. Officer Baker testified that he stopped the vehicle to write up a “field investigation report” for the robbery division.
Officer Baker approached the driver’s door and asked the driver for his license. At that time, Baker noticed that the appellant, seated in the front on the passenger side, appeared to be trying to conceal an object under his seat. Baker then ordered the occupants out of the vehicle whereupon they were patted down, producing nothing. The occupants were taken to another patrol car. Officer Baker returned to the appellant’s vehicle and observed a bulge underneath the seat cover on the front passenger seat. He retrieved the object which he found was the .38 pistol which is the subject of the instant offense. Appellant was then arrested for carrying a concealed firearm. Subsequently, appellant told the officers that he had the gun for his own protection.
To justify the officer’s stop and detention in the subject ease, the officer must have a “founded suspicion” that criminal activity was afoot. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989); State v. Hughes, 562 So.2d 795, 796 (Fla. 1st DCA 1990); § 901.151, Fla.Stat. (1989). A bare suspicion of illegal activity will not suffice. Blair v. State, 563 So.2d 824 (Fla. 2nd DCA 1990); Freeman v. State, 433 So.2d 9 (Fla. 2nd DCA 1983).
In looking at the totality of the circumstances in the instant case, it is noteworthy that the subject encounter was relatively free of the kind of factors which are typically present in those cases where the “founded suspicion” standard has been deemed satisfied. The subject transaction did not occur in the “wee hours” or late at night; the appellant and his companions were at a shopping center parking lot open to the public at a time when the stores were still open;[1] appellant’s vehicle was not involved in any traffic infraction and was being operated lawfully; there was no evasive action taken by any of the occupants in response to the presence of the officer’s marked patrol vehicle; and the descriptions which the officer had of the suspects as well as their vehicle were so generic as to cover a broad range of innocent persons and vehicles.
The cases relied upon by the state are materially distinguishable. E.g., Johnson v. State, 537 So.2d 117 (Fla. 1st DCA 1988) (initial stop approved as a valid traffic stop because of traffic infraction — obstructing flow of traffic); State v. Lawson, 446 So.2d 202 (Fla. 3rd DCA 1984) (car circled block four or five times at 4:00 A.M. in an area of burglaries); State v. King, 485 So.2d 1312 (Fla. 5th DCA 1986) (observations of drug activity); Goodman v. State, 399 So.2d 1120 (Fla. 4th DCA 1981) (direct observations of drug activity).
Were we to sustain this stop and detention, we would be encouraging a law enforcement practice which could potentially encompass many innocent citizens. A variety of scenarios can be easily imagined from the facts known to the officer in the instant case. For example, the detainee may have simply dropped a friend or family member off at a store and was merely circling the parking lot waiting for the friend or family member to exit. The “net” which the state asks for in this case is simply too broad.
Reversed and remanded with instructions to vacate the adjudication and to grant the appellant’s motion to suppress.
SMITH, J., and WILLIS, BEN C., Associate Judge, concur.

. Appellee attaches significance to the fact that this event took place at 8:50 P.M., ten minutes before the stores were to close. However, the record is devoid of any evidence indicating a scheduled closing time for the stores.