596 So.2d 98 (1992)
Anthony Wayne GRANT, Appellant,
v.
STATE of Florida, Appellee.
No. 91-00257.
District Court of Appeal of Florida, Second District.
March 11, 1992.
James Marion Moorman, Public Defender, Bartow, and Allyn Giambalvo, Asst. Public Defender, Clearwater, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Michael J. Neimand and Consuelo Maingot, Asst. Atty. Gen., Miami, for appellee.
PARKER, Judge.
Anthony Grant appeals his convictions for possession of cocaine and possession of paraphernalia. Grant entered a plea of nolo contendere, reserving his right to appeal the denial of his motion to suppress the cocaine and a crack cocaine pipe. We reverse, concluding that the evidence was seized as the result of an unlawful detention.
*99 A St. Petersburg police officer saw a group of people in the early morning hours in a high drug activity area. The group dispersed when the officer drove up in his marked cruiser. The officer knew Grant from a prior arrest and ordered Grant to come and talk with him. As Grant was walking back toward the officer, the officer noticed Grant dropping a white object behind a hydrant. At that point, the officer ordered Grant to remain there, and the officer summoned a back-up officer. Once the back-up officer arrived, the officer seized the object, which was a bottle, looked into the bottle, and saw what he suspected to be crack cocaine. The officer conducted a presumptive test on the material in the bottle, and he testified that it tested positive for cocaine.[1] Additionally, a K-9 unit alerted to the bottle when the officer hid it in the cruiser. The officer arrested Grant for possession of cocaine and transported him to jail. An officer searched Grant at the jail and found a pipe containing cocaine residue on Grant's person.
Grant filed a motion to suppress, and the trial judge denied the motion. The judge found that the officer had a good-faith basis for inquiring of Grant based on the fact that the officer knew the background of Grant, that it was 2:00 a.m., and that Grant was in a known drug area. The trial judge further found that the officer had probable cause to arrest Grant once the K-9 unit alerted to the bottle.
We disagree. The officer had no reasonable suspicion that Grant had committed, was committing, or was about to commit a crime. The fact that a person in a high crime area flees at the sight of an officer does not constitute a reasonable suspicion. See, e.g., Schaub v. State, 576 So.2d 1361 (Fla. 2d DCA 1991) (no reasonable suspicion when person who officer knew used cocaine ran from high crime area at 3:00 a.m.); Curry v. State, 576 So.2d 890 (Fla. 2d DCA 1991) (no reasonable suspicion when group of males in drug area dispersed at sight of police); Daniels v. State, 543 So.2d 363 (Fla. 1st DCA 1989) (no reasonable suspicion when officer, who has past experiences on the crack cocaine squad, observed a large group gathered behind a tavern and suspected that the individuals were involved in drug deals and defendant, upon seeing the police, appeared very nervous and went into the tavern); Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989) (no reasonable suspicion when officer observed the defendant huddled with two other persons behind a bar in a drug area and the defendant fled at sight of police).
This court, in McCoy v. State, 565 So.2d 860 (Fla. 2d DCA 1990), did find, under similar circumstances, that reasonable suspicion of criminal activity existed to justify an investigatory stop of one of a group of fleeing individuals in an area of drug activity. That case, however, is distinguishable because before any stop had occurred, an officer who was experienced in drug arrests saw the defendant drop an object which the officer believed by its size and color to be rock cocaine. In the instant case, the officer had initiated the stop of Grant and Grant had submitted to the officer's authority before the officer saw Grant discarding the bottle.
We also have considered the recent supreme court case of State v. Anderson, 591 So.2d 611 (Fla. 1992). The supreme court found in Anderson that under the totality of the circumstances the officers had a founded suspicion that Anderson had engaged in a narcotics transaction. The following are the relevant facts in Anderson: officers observed the man with whom Anderson had conducted business engage in several similar transactions; it was around midnight; and the officers observed Anderson's furtive actions upon seeing the officers. The distinguishing fact in Anderson is that the officers observed some type of transaction; whereas, the officer in the instant case did not observe any *100 transaction involving Grant or others in his group.
The state argues in the alternative that the initial contact was a consensual encounter. The state also advanced this theory in the trial court. The trial judge, however, implicitly rejected this argument because he found that the officer had a good-faith basis to question Grant or, in other words, a reasonable suspicion to stop Grant. Further, the evidence supports that this was a temporary detention and not a consensual encounter. The officer testified and his police report stated that he ordered Grant to come over and talk with him.
The state also advances the theory that the stop was lawful because Grant had an unlicensed bicycle which was against a city ordinance. Although the prosecutor elicited that testimony from the officer, the officer never testified that he noticed that the bicycle was unlicensed prior to the stop or that the unlicensed bicycle was the reason for the stop. Thus, the state failed to prove that a reasonable police officer under those facts and circumstances would have stopped the defendant, as required by Kehoe v. State, 521 So.2d 1094 (Fla. 1988).
Having concluded that the initial stop was unlawful, it must be determined whether, at the time Grant dropped the bottle, Grant had been seized within the meaning of the fourth amendment. A person is seized when he comes under the officer's control either by physical force or by submission to the assertion of authority. California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The facts of this case are similar to the case of Curry v. State, 576 So.2d 890 (Fla. 2d DCA 1991). In Curry, officers saw a group of males. Curry began to walk away when he observed the officers. The officers told Curry to stop. As Curry began returning to the group, he spit out cocaine. This court held that the cocaine should have been suppressed because Curry discarded the evidence after the commencement of an illegal stop. In the instant case, the bottle and its contents must be suppressed because Grant's act of discarding the bottle was the result of his illegal detention. See Anderson, 591 So.2d at 613. Further, the pipe and the trace of cocaine found on the pipe also must be suppressed because all that reasonably flows from an illegal detention is suppressible. See Ottney v. State, 571 So.2d 20 (Fla. 2d DCA 1990).
Reversed and remanded for proceedings consistent with this opinion.
RYDER, A.C.J., and LEHAN, J., concur.
NOTES
[1] The officers performed presumptive tests on the samples of material in the bottle at the hearing on the motion to suppress, and the in-court tests were inconclusive. A forensic chemist testified at the hearing that she did not find the material in the bottle to be cocaine.